IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| UNITED STATES FIRE INSURANCE COMPANY, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) CIVIL ACTION NO.: ) ) ) |
| UNIFIED LIFE INSURANCE COMPANY, | ) ) |
| Defendant. | ) |

**COMPLAINT FOR DECLARATORY JUDGMENT**

Plaintiff, United States Fire Insurance Company ("U.S. Fire"), by its undersigned attorneys, for its Complaint for Declaratory Judgment against Defendant, Unified Life Insurance Company ("Unified"), alleges as follows:

**NATURE OF THE CLAIM**

1. This is an action for declaratory judgment, pursuant to 28 U.S.C. §2201, seeking a determination as to the rights and obligations of the parties in connection with a reinsurance contract between plaintiff U.S. Fire and defendant Unified, in which Unified is the ceding insurer and U.S. Fire is the reinsurer. The reinsurance contract at issue is a Quota Share Treaty reinsurance contract, which reinsured a program of short-term medical insurance written by Unified (the "Quota Share Treaty"). U.S. Fire seeks a declaration that it has no obligation to indemnify Unified for any amounts in relation to the Underlying Action because Unified's unreasonably late notice of the claims prejudiced U.S. Fire. U.S. Fire also seeks a declaration, in the alternative, that it has no obligation to indemnify Unified for the costs that it incurred defending against the claims asserted in the Underlying Action, no obligation to indemnify for the amount of the settlement of

the Underlying Action for payment of class counsel's fees, no obligation to reimburse Unified's defense costs, and for a declaration that it is entitled to a set-off for any amounts recovered by Unified in subrogation.

## THE PARTIES

2.Plaintiff U.S. Fire is a corporation organized under the laws of the state of Delaware with its principal place of business in New Jersey.

3.Upon information and belief, Defendant Unified is a corporation organized and existing under the laws of the state of Texas, with its principle place of business in Overland Park, Kansas.  Upon information and belief, Defendant Unified's registered agent is located in Irving, Texas.

## JURISDICTION AND VENUE

4.This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332 because the plaintiff and defendant are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

5.Upon information and belief, this Court has personal jurisdiction over defendant Unified because it is incorporated in Texas.

6.Venue is proper in this Court, pursuant to 28 U.S.C. §1391(b)(1), because Defendant Unified resides in this District as this is where its agent for service of process is located.

## THE UNDERLYING ACTION

7.On or about April 25, 2017, Charles M. Butler, III, and Chloe Butler (the "Butlers"), filed its Complaint in an action against defendant Unified, styled *Charles M. Butler, III, et al. v. Unified Life Insurance Company, et al.*, Case No. CV-17-50, in the United States District Court

for the District of Montana. (the "Underlying Action"). A true and correct copy of the Complaint is attached hereto as Exhibit A.

8. The Complaint in the Underlying Action has been amended several times and the operative complaint at the time of the settlement was the Third Amended Complaint, filed on or about December 3, 2018.

9. The Complaint in the Underlying Action alleged that Charles Butler was sold health insurance by Unified in February 2016, which became effective on April 1, 2016. It alleges that Mr. Butler was diagnosed with testicular cancer in August 2016, and was diagnosed with metastasis to the lungs in February 2017.

10. The Complaint also alleges that that Unified did not pay any of Mr. Butler's medical bills as required by the policy and that his policy was terminated without the required notice at the end of February 2017.

11. The Complaint also alleged that when Mr. Butler purchased the policy he was told that he would be covered by a network, and that he was not told that medical bills would be "discounted" for payment or that he would be subject to balance billing.

12. The Complaint also alleged that Unified breached the policy by discounting the medical bills to less than the "Reasonable and Customary Charge" as defined in the policy, which *inter alia*, caused the Butlers to take longer to satisfy their $5,000 deductible. The Butlers also alleged that Unified breached the policy by failing to provide a network of providers that would protect them from balance billing.

13. Count I of Original Complaint alleged a claim for Breach of Contract. Count I alleged that Unified breached the contract "by discounting medical bills to lower than the 'Reasonable and Customary Charge' as defined in the policy, by failing to disclose to Mr. Butler

the methodology behind their discounting," and subjecting the Butlers to balance billing. The Butlers also asserted additional counts, including (II) "Unfair Claims Settlement Practices and violations of the Montana Unfair Claims Settlement Practices Act;" (III) "Fraudulent Inducement;" (IV) "Deceit;" (V) "Constructive Fraud;" (VI) "Negligent Misrepresentation;" (VII) "Breach of Insurance Agent Absolute Duty;" (VIII) "Promissory Estoppel;" (IX) "Equitable Estoppel;" (X) "Consumer Protection Act;" and (XI) "Malice."

14. Unified did not notify the Reinsurers of the claims asserted by the Butlers in their Original Complaint.

15. On or about June 26, 2016, the Butlers filed their Amended Complaint. A true and correct copy of the Amended Complaint is attached hereto as Exhibit B. The Amended Complaint contained identical "Factual Background" allegations as the original Complaint. Count I of the Amended Complaint again alleged a claim for breach of contract, and again alleged that Unified breached the contract "by discounting medical bills to lower than the 'Reasonable and Customary Charge' as defined in the policy, by failing to disclose to Mr. Butler the methodology behind their discounting," and subjecting the Butlers to balance billing.

16. Unified did not notify the Reinsurers of the claims asserted by the Butlers in their First Amended Complaint.

17. On or about January 5, 2018, the Butlers filed their Second Amended Complaint. A true and correct copy of the Second Amended Complaint is attached hereto as Exhibit C. Count I of the Second Amended Complaint again alleged a claim for breach of contract, again alleging that Unified breached the contract "by discounting medical bills to lower than the 'Reasonable and Customary Charge' as defined in the policy, by failing to disclose to Mr. Butler the methodology behind their discounting," and subjecting the Butlers to balance billing.

18. Unified did not notify the Reinsurers of the claims asserted by the Butlers in their Second Complaint.

19. On or about August 16, 2018, the Butlers filed a motion for leave to file their Third Amended Complaint to add class claims to the Underlying Action. A true and correct copy of the motion is attached hereto as Exhibit D. Count I of the Proposed Third Amended Complaint again alleged a claim by the Butlers for breach of contract, again alleging that Unified breached the contract "by discounting medical bills to lower than the 'Reasonable and Customary Charge' as defined in the policy, by failing to disclose to Mr. Butler the methodology behind their discounting," and subjecting the Butlers to balance billing.

20. The proposed Third Amended Complaint also added class claims on behalf of all Unified policyholders and requested that Charles Butler be appointed as the class representative.

21. The only claim for class relief in the proposed Third-Party Complaint was for breach of contract. The proposed Third-Party Complaint alleged that Unified breached the policy as to the class plaintiffs by systematically discounting allowed medical charges significantly below "the usual charge" in the geographic area and by systematically failing to provide a network that protected the class members from balance billing.

22. Unified did not notify the Reinsurers of the motion for leave to file the Third Amended Complaint, or claims asserted by the Butlers or the class claims in the proposed Third Amended Complaint.

23. On or about December 3, 2018, Magistrate Cavan granted the motion and the Third Amended Complaint was filed the same day.

24. On or about August 30, 2018, the Butlers filed their motion for class certification. A true and correct copy of the motion for class certification is attached hereto as Exhibit E.

25. Unified did not notify the Reinsurers of the motion for class certification.

26. On September 5, 2018, the Butlers filed their motion for partial summary judgment on the breach of contract claim. A true and correct copy of the motion for partial summary judgment is attached hereto as Exhibit F. The motion argued on behalf of the Butlers and the putative class that Unified breached the policy by not paying the "usual charge" for "necessary medical services … in the geographic area in which the services … are furnished." The motion also argued that Unified breached the policy by failing to provide the Butlers and the putative class with access to a network and exposing them to balance billing.

27. Unified did not notify the Reinsurers of the motion for partial summary judgment.

28. On or about August 9, 2019, Magistrate Judge Cavan recommended granting in part and denying in part plaintiffs' motion for partial summary judgment. Specifically, Magistrate Cavan recommended finding that Unified breached the policy with Mr. Butler by failing to pay the "usual charge … in the geographic area" as required by the policy. The Magistrate Judge also recommended denying the motion for class certification. A the magistrate's order is attached hereto as Exhibit G.

29. On or about September 30, 2019, the district judge granted the motion for partial summary judgment, and overruled the recommendation of the magistrate and granted the motion for class certification.

30. Although not alleged in the Underlying Action, Unified did eventually begin paying medical bills submitted by the Butlers.

31. By letter dated December 20, 2019, Unified provided first notice to U.S. Fire of the Underlying Action.

32. Pursuant to the terms of the Quota Share Treaty, the Butler medical claims were ceded to the reinsurers, including U.S. Fire, and U.S. Fire paid its required share of those claims.

33. Unified did not notify U.S. Fire that the amounts it was ceding for payment under the Quota Share Treaty were the subject of the Underlying Action and were being challenged by Butler as not being reasonable and customary.

34. On or about November 12, 2020, Unified filed under seal its Motion for Clarification in the Underlying Action. The motion was supported by an affidavit of Gregory Russo and Joanna Younts from the Berkeley Research Group.

35. Mr. Russo and Ms. Younts were experts on medical repricing that were recommended by U.S. Fire earlier in 2020.

36. On or about November 30, 2020, the Butlers filed a "Motion to Strike Unified's New Expert Report." A copy of the motion is attached hereto as Exhibit H. The motion argued, *inter alia*, that the "new" expert report was filed more than two years after the June 15, 2018 deadline for disclosing expert witnesses.

37. On or about February 4, 2021, Unified filed its Motion for Leave to File a Motion for Reconsideration in the Underlying Action. A copy of the motion is attached hereto as Exhibit I.

38. On or about March 24, 2021, the district judge entered an order: (1) denying Unified's motion for leave to seek reconsideration; (2) denying Unified's Motion for Clarification; and (3) granting the Butlers' Motion to Strike. A true and correct copy of the Order is attached hereto as Exhibit J.

39. On the Motion to Strike, the Court found that Unified could have raised these arguments before the expert report deadline and that it did not seek additional time before

responding to the motions for summary judgment or for class certification. The court also found that Unified did not "attempt to present this new expert testimony during those arguments."

40. Upon information and belief, on or about May 9, 2016, a Notice of Proposed Agency Action and Opportunity for Hearing ("NOAA") was filed against Unified before the Commissioner of Securities and Insurance, Montana State Auditor.

41. On information and belief, on or about August 2, 2016, the president of Unified executed a Consent Decree with the Commissioner of Securities and Insurance, Montana State Auditor.

42. In the Consent Decree, Unified agreed to "offer a full premium refund to Montanans who paid [Unified] for a short term medical policy offered through [Health Insurance Innovations, Inc.] agents."

43. Upon information and belief, the Butlers were among those that were eligible to be offered a premium refund.

44. Unified never advised U.S. Fire of the NOAA or the consent decree in Montana.

45. Upon information and belief, similar actions were taken against Unified in other jurisdictions.

46 Unified never advised U.S. Fire of regulatory actions against it in any state relating to its STMP.

## THE REINSURANCE CONTRACTS
### The Quota Share Treaty

47. Unified and various reinsurers, including U.S. Fire, entered into an "Xchange Benefits Short Term Medical Program Quota Share Reinsurance Agreement," effective beginning November 1, 2014, and pursuant to which Unified was responsible for 50% of the risk and the

reinsures collectively (referred to in the Reinsurance Agreement as "the Reinsurer") were responsible for 50% of the risk.

48. Each reinsurer and Unified entered into related "Interest and Liabilities Contracts" (the "I&L Contracts") providing for, *inter alia*, the reinsurer's individual share of the risk. (The "Xchange Benefits Short Term Medical Program Quota Share Agreement" and the related I&L Contracts are referred to herein as the "Quota Share Treaty.") A copy of the Quota Share Treaty is attached hereto as Exhibit K.

49. The Quota Share Treaty was divided into "Agreement Years," defined as November 1, through October 31, of each consecutive year. U.S. Fire participated in the Quota Share Treaty for three Agreement Years. Pursuant to the I&L Contracts, U.S. Fire's share of the risk for Agreement Year 1 (from November 1, 2014 to November 1, 2015) was 30% (60% of 50%). For Agreement Year 2 (November 1, 2015 to November 1, 2016) and Agreement Year 3 (November 1, 2016 to November 1, 2017), U.S. Fire's share of the risk was 25% (50% of 50%).

50. For each Agreement Year, Unified ceded to the Reinsurers 50% of the Net Loss under policies issued that year by Unified to policyholders under its "Short Term Medical Program" ("STMP"), subject to the terms, conditions, exclusions and limitations of the Quota Share Treaty. Unified also ceded to the Reinsurers 50% of Extra Contractual Obligations as defined in the Quota Share Treaty, also subject to the terms, conditions, exclusions, and limitations of the Quota Share Treaty.

51. The Quota Share Treaty agrees to provide the following Reinsurance Coverage

> **Article IV – Reinsurance Coverage**
>
> A. With respect to the Policies subject to this Agreement, the Company shall cede to the Reinsurer, and the Reinsurer shall accept 50% of the Company's Net Loss, subject to policy limits up to and including $1,000,000. However, the liability of the Reinsurer as respects Extra Contractual Obligations shall not exceed $5,000,000 in the aggregate for all insured persons per Agreement Year.

      B. In addition to its limits of liability above, the Reinsurer shall cover any Extra Contractual Obligations arising from Claims incurred on the policies reinsured hereunder. The Reinsurer shall indemnify the Company for such Extra Contractual Obligations in the same proportion as the Reinsurer's share in the Net Loss bears to the total amount of the Company's Net Loss. However, the Reinsurer's maximum liability for all Extra Contractual Obligations shall not exceed $5,000,000 per Agreement Year.

52. The Quota Share Treaty defined the term Net Loss to include amounts that Unified was required to pay under STMP policies, plus any "Loss Adjustment Expense," defined in the Quota Share Treaty as expenditures by the Company and as "allocated to an individual claim or loss, in investigating, resisting, settling, adjusting, auditing, managing and processing of Claims, including litigation expenses and pre or post-judgment interest...."

53. The term "Extra Contractual Obligations" was defined in the Quota Share Treaty as obligations, incurred by Unified, other than contractual obligations arising under the express written terms and conditions of a policy, such as punitive damages, bad faith damages, or damages or statutory penalties arising from willful or negligent acts, errors or omissions by Unified. Under the terms of the Quota Share Treaty, "Extra-Contractual Obligations" are not covered unless the Reinsurers concurred in the claim action leading to the Extra Contractual Obligations.

54. Under Article VII - Claims and Loss Adjustment Expense, the Quota Share Treaty provides, in relevant part, as follows:

      A.    The Reinsurer agrees to abide by all Claim payments and settlements made by or on behalf of the Company, according to policy conditions or in accordance with the Extra Contractual Obligations Article, and the Reinsurer agrees to pay or allow, as the case may be, its proportion of each such settlement.

55. Under Article VIII – Claim Notices and Settlement, the Quota Share Treaty provides, in relevant part, as follows:

      B.      [Unified] shall also advise the Reinsurer promptly of all Claims which, in the opinion of [Unified] may result in a Claim hereunder and of all subsequent developments thereto which, in the opinion of [Unified], may materially affect the position of the Reinsurer.

\*                  \*                  \*

      E.      The Reinsurer shall have the right to participate at its own expense, with [Unified] or Manager in a defense and/or settlement of any Claims of which it may be interested.  In the event a lawsuit is filed which involves a claims decision, [Unified] has the final authority in hiring outside counsel, agreeing upon the terms of a potential settlement and shall have the final authority over all strategic decisions made in the course of litigation.

56.     Article X – Subrogation, contained in the Quota Share Treaty states:

> The Reinsurer shall be credited with its proportionate share of recoveries from subrogation (i.e., reimbursement obtained or recovery made by the Manager or the Company, less the actual cost, excluding salaries of officials and employees of the Manager or the Company and sums paid to attorneys as retainer, of obtaining such reimbursement or making such recovery) on account of Claims and settlements involving reinsurance hereunder. The Company hereby agrees to enforce its rights to subrogation relating to any Claim, a part of which Claim sustained by the Reinsurer, and to prosecute all Claims arising out of such rights where economically feasible in the opinion of the Company.

57.     The Quota Share Treaty does not provide that the Reinsurers, including U.S. Fire, have any obligation to defend Unified under any circumstances.  Unified agrees that U.S. Fire did not have a duty to defend and withdrew its request for a defense.

58.     The Quota Share Treaty does not provide that U.S. Fire has any obligation to pay Unified's defense costs in the Underlying Action because they were not allocated to an individual claim.

## PREJUDICE TO U.S. FIRE FROM THE LATE NOTICE OF CLAIM

59.     By letter dated December 20, 2019, Unified provided first notice to U.S. Fire of the Underlying Action.  The letter stated that "Unified will provide in due course an itemization of

litigation expenses incurred in the litigation to date for purposes of reimbursement under the terms of the Reinsurance Agreement."

60. By letter from its counsel dated February 12, 2020, U.S. Fire acknowledged the claim, requested additional information, and set forth a reservation of rights.

61. By letter dated February 20, 2020, Unified responded to the letter from U.S. Fire. Among other things, the letter stated: "Please be advised that Unified requests U.S. Fire's assumption of its obligation to fund defense of the class claims, which we understand U.S. Fire may elect to do under a reservation of rights. That the claims lack merit or may not yet be fully developed does not relieve U.S. Fire of its duty to defend."

62. Unified's counsel subsequently retracted his claim that U.S. Fire has a duty to defend.

63. By letter dated May 6, 2020, U.S. Fire reiterated to Unified's counsel that Unified's notice of the class allegations to U.S. Fire was late, coming some 18 months after Butler first made class allegations and only after the court had already granted class certification. U.S. Fire further advised Unified that it had not kept U.S. Fire apprised of the status of the Underlying Action or a strategy for defending the class claims. U.S. Fire reminded Unified that it could have been of assistance in defending against the class action and breach of contract allegations because U.S. Fire reinsurers other health insurers, and also writes direct health insurance. A copy of the letter of May 6, 2020, is attached hereto as Exhibit L.

64. Based on that experience, U.S. Fire suggested certain steps, including filing of motions to reconsider the class certification and breach of contract rulings, and recommending experts in medical repricing that it believed were critical to protecting and limiting Unified's exposure in the Underlying Action.

65. By letter dated May 15, 2020, Unified provided a status update and acknowledgment of U.S. Fire's recommendations.

66. By letter dated September 22, 2020, Unified advised U.S. Fire, and various other reinsurers,' that it intended to make a settlement offer to the class/individual plaintiffs.

67. In February 2021, Unified and U.S. Fire exchanged correspondence wherein Unified reiterated that it was in settlement negotiations and demanded contribution from U.S. Fire towards the proposed settlement.

68. By letter dated February 11, 2021, Unified also confirmed that it filed a motion for reconsideration of the court's class certification order, a motion that had been recommended by U.S. Fire on May 6, 2020.

69. By letter dated April 13, 2021, U.S. Fire reminded Unified that accepting U.S. Fire's recommendation on repricing experts led to opinions that would have been helpful opposing original class certification motions and seeking earlier reconsideration of certain rulings in the underlying case. A copy of the letter of April 13, 2021, is attached hereto as Exhibit M.

70. Unified's failure to notify U.S. Fire of the claims in a timely manner resulted in critical errors in the handling of the Underlying Lawsuit, including prejudicial rulings by the Court. Favorable expert testimony was ruled untimely by the Court. Unified's motions for clarification and reconsideration were also denied. Had Unified retained U.S. Fire's recommended experts at the time of briefing of the breach of contract or class certification motions, they could have assisted in preparing arguments in opposition to the motion. This, and other critical errors, were the direct result of Unified's unreasonably late notice to U.S. Fire of the claim.

## UNIFIED'S SETTLEMENT OF UNDERLYING CLAIMS

71. On June 16, 2021, Unified advised U.S. Fire, and various other reinsurers, that it had reached a settlement in principle of the class claims and "expected" U.S. Fire's contribution in its proportional share of the settlement payment and expenses.

72. By letter dated July 13, 2021, U.S. Fire reiterated the prejudice suffered by Unified's unreasonably late notice.  It also explained that the Follow the Settlements provision in the treaties does not require U.S. Fire to contribute to claims that are not otherwise covered under the treaties or where Unified has failed to comply with its obligations. A copy of the letter of July 13, 2021, is attached hereto as Exhibit N.

73. Unified then entered into a settlement with the Class in which Unified agreed to pay $8 million, of which $ 6 million would be paid to class members and $2 million would be a fee award for class counsel for attorneys' fees. Unified and the underlying plaintiffs agreed to a formula for payment of specific amounts to each individual class member (hereinafter the "Settlement").

74. Unified also claims that it incurred approximately $1,200,000 in defense costs in the class action.

## COUNT I
## DECLARATORY JUDGMENT
## (Unreasonably Late Notice Under The Treaties)

75. U.S. Fire repeats, realleges, and incorporates by reference the allegations of Paragraphs 1 through 74, exclusive, as its allegations of Paragraph 75, as though fully set forth herein.

76. The Butlers filed their original complaint against Unified on or about April 25, 2015, alleging, *inter alia*, a claim for breach of contract.

77. The breach of contract claim was based on Unified's allegedly improper discounting of claims and paying less than was customarily charged in the area. Each amended complaint included the same breach of contract claim as Count I. The class action allegations were also based on the same breach of contract claims.

78. Upon information and belief, Unified was new to the health insurance market when it began selling Short-Term Medical Policies in 2015.

79. The medical "repricing" on which the breach of contract claims were based are highly technical but regularly faced by health insurers.

80. As a health insurer with significant experience both as a reinsurer and as a direct insurer, U.S. Fire could have provided critical assistance in defending against the breach of contract claims based on medical repricing, including recommending qualified experts prior to the discovery deadline and arguments in response to the repricing claims.

81. Had U.S. Fire been notified of the repricing claims when the Underlying Action was filed in 2017, or at least when the Butlers filed their motions for class certification and for partial summary judgment, it could have provided advice and assistance in responding to the claims that could have changed the result.

82. On or about September 30, 2019, the district judge granted both the motion for partial summary and motion for class certification. The district judge subsequently clarified that her ruling on the motion for partial summary judgment applied on a class-wide basis.

83. Unified's unreasonable failure to provide timely notice to U.S. Fire was due to gross negligence or recklessness.

84. Unified's unreasonable failure to provide timely notice to U.S. Fire was in bad faith.

**WHEREFORE**, United States Fire Insurance Company respectfully requests that this Honorable Court enter an order adjudging, decreeing, and declaring as follows:

1. That Unified provided unreasonably late notice of the Underlying Action;

2. That U.S. Fire has no obligation to pay any amounts on the claims of the Butlers or the class members other than what it has already paid in the ordinary course of business;

3. That U.S. Fire has no obligation to reimburse Unified for any defense costs or any damages imposed in the Underlying Action; and

4. Such other relief as this Court finds just and appropriate.

## COUNT II
## DECLARATORY JUDGMENT
## (In the Alternative, There is No Obligation to Indemnify Unified for the Attorney Fee Award)

85. U.S. Fire repeats, realleges, and incorporates by reference the allegations of Paragraphs 1 through 74, inclusive, as its allegations of Paragraph 85, as though fully set forth herein.

86. In the Alternative, even if the Court should find that U.S. Fire has an obligation to indemnify Unified for the Settlement, which U.S. Fire denies, U.S. Fire has no obligation to indemnify Unified for the Attorney Fee portion of the Settlement.

87. Under Article IV of the Quota Share Treaty, U.S. Fire agreed to assume a proportional share of Unified's "Net Loss," which is defined as "Claims paid on or on behalf of [Unified]."

88. "Claims" is defined as Unified liability for eligible expenses as defined" in the STM Policies.

89. Under the Quota Share Treaty, U.S. Fire would only be obligated to indemnify Unified for payment of claims for medical expenses.

90. Payment of attorneys' fees to class counsel is not "Net Loss" because it is not a payment of a Claim as defined by the STM Policies.

91. Further, attorneys' fee award do not constitute "extra contractual obligation[s]" under the contract because they are not obligations other than contractual obligations arising under the express written terms and conditions of a policy.  In this case, Unified was not found liable on the basis of an extra contractual award for bad faith or fraud.   It was found liable to pay the full amount due under the policies, not for a breach of any other obligations.

92. U.S. Fire has no obligation to pay the attorney fee portion of the Settlement because the contract does not permit payment of those costs.

**WHEREFORE**, United States Fire Insurance Company respectfully requests that, in the alternative to an award in its favor on Count I, this Honorable Court enter an order adjudging, decreeing, and declaring that U.S. Fire has no obligation indemnify Unified for the $2,000,000 attorney fee awarded as a portion of the Settlement.

## COUNT III
## DECLARATORY JUDGMENT
### (In the Alternative, U.S. Fire Has No Obligation to Reimburse Unified's Defense Counsel Fees)

93.     U.S. Fire repeats, realleges, and incorporates by reference the allegations of Paragraphs 1 through 74, inclusive, as its allegations of Paragraph 93, as though fully set forth herein.

94.     In the Alternative, if the Court determines that U.S. Fire has an obligation to indemnify Unified for the Underlying Action, U.S. Fire asserts that the costs incurred by Unified defending against the Underlying Action are not recoverable under the Quota Share Treaty.

95.     Pursuant to the contract, U.S. Fire can only be responsible for its portion of "Loss Adjustment Expense" where it is "allocated to an individual claim or loss."

96.     Defense costs paid by Unified defending against the Underlying Action are not allocated to any individual claim.

97.     As such, U.S. Fire has no obligation to reimburse any defense costs incurred by Unified in the defense of the Underlying Action.

**WHEREFORE**, United States Fire Insurance Company respectfully requests that, in the alternative to an award in its favor on Count I, this Honorable Court enter an order adjudging, decreeing, and declaring that U.S. Fire has no obligation to reimburse Unified for any defense costs allegedly incurred in defending against the Underlying Action.

## COUNT IV
## DECLARATORY JUDGMENT
### (In the Alternative, U.S. Fire Is Entitled to a Set off in Subrogation)

98.     U.S. Fire repeats, realleges, and incorporates by reference the allegations of Paragraphs 1 through 74, inclusive, as its allegations of Paragraph 98, as though fully set forth herein.

99. In the alternative, if the Court should find that U.S. Fire owes a duty to indemnify Unified for the Underlying Action, U.S. Fire is entitled to a setoff for any recovery obtained by Unified against any other entity, including, upon information and belief, National Brokers of America, Health Insurance Innovations, and Multiplan in the Butler Litigation.

100. Under Article X – Subrogation of the Quota Share Treaty, U.S. Fire is credited with its proportionate share of recoveries from subrogation…on account of Claims and settlement involving reinsurance. Unified agreed to enforce its rights to subrogation relating to any Claim…and prosecute all Claims arising out of such rights where economically feasible.

101. As such, to the extent Unified is successful in pursing any claim for recovery against any entity, U.S. Fire is entitled to a set off in subrogation for its share of recovery.

**WHEREFORE**, United States Fire Insurance Company respectfully requests that, this Honorable Court enter an order adjudging, decreeing, and declaring that, in the alternative to an award in its favor on Count I, U.S. Fire is entitled to a set off in subrogation against any recovery under Article X of the Quota Share Treaty.

Date: April 18 , 2022.                                Respectfully submitted:

**KENNEDYS CMK LLP**

By: /s/ John D. LaBarbera
John D. LaBarbera (#6274012IL)
john.labarbera@kennedyslaw.com
Benjamin A. Blume  *Admission Pending*
benjamin.blume@kennedyslaw.com
KENNEDYS CMK
100 North Riverside Plaza, Suite 2100
Chicago, Illinois 60606
T: 312-800-5021
F: 312-207-2110

Daisy Khambatta
SBN: 24029654
daisy.khambatta@kennedyslaw.com

KENNEDYS CMK
3821 Juniper Trace, Suite 101
Austin, Texas 78738
T: 512-359-8833
F: 312-800-5010

*Designated Local Counsel*
Michael C. Smith
SBN: 24013533
msmith@cobbmartinez.com
COBB MARTINEZ WOODWARD PLLC
1700 Pacific Avenue, Suite 3100
Dallas, Texas 75201

**ATTORNEYS FOR UNITED STATES FIRE INSURANCE COMPANY**