IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES FIRE INSURANCE COMPANY, | § § § | |
| Plaintiff-Counterdefendant, | § § | |
| v. | § § | Case No. 3:22-cv-00868-BT |
| UNIFIED LIFE INSURANCE COMPANY, | § § § | |
| Defendant-Counterclaimant. | § § | |

## **MEMORANDUM OPINION AND ORDER**

This is a declaratory judgment action seeking a determination of the rights and obligations of the parties in connection with a reinsurance agreement between Plaintiff-Counterdefendant United States Fire Insurance Company (USF) and Defendant-Counterclaimant Unified Life Insurance Company (Unified). Unified also asserts a claim against USF for breach of the reinsurance agreement. Before the Court are the parties' cross motions for summary judgment. For the following reasons, the Court determines that USF owes a duty to Unified under the reinsurance agreement to pay a portion of a class settlement and associated costs and fees and that USF breached that duty when it failed to pay as required under the agreement. Accordingly, the Court DENIES USF's Motion for Summary Judgment (ECF No. 31) and GRANTS Unified's Affirmative Motion for Summary Judgment (ECF No. 26).

## Background

A.  The Reinsurance Treaty

At one time, Unified, a Texas insurance company, offered short-term medical ("STM") insurance products. In connection with its STM products, Unified entered into a reinsurance agreement with various reinsurance companies, including USF (the "Reinsurance Treaty"). *See* Def.'s App., Ex. A-1 & A-2 (ECF No. 28).

Under the terms of the Reinsurance Treaty, the reinsurers, including USF, agreed to provide reinsurance coverage as follows:

Article IV – Reinsurance Coverage

A.  With respect to the Policies subject to this Agreement, [Unified] shall cede to the Reinsurer, and the Reinsurer shall accept 50% of [Unified's] Net Loss, subject to policy limits up to and including $1,000,000. However, the liability of the Reinsurer as respects Extra Contractual Obligations shall not exceed $5,000,000 in the aggregate for all insured persons per Agreement Year.

B.  In addition to its limits of liability above, the Reinsurer shall cover any Extra Contractual Obligations arising from Claims incurred on the policies reinsured hereunder. The Reinsurer shall indemnify [Unified] for such Extra Contractual Obligations in the same proportion as the Reinsurer's share in the Net Loss bears to the total amount of [Unified's] Net Loss. However, the Reinsurer's maximum liability for all Extra Contractual Obligations shall not exceed $5,000,000 per Agreement Year.

*Id.* at 16. That is, the reinsurers agreed to accept 50% of Unified's "Net Loss" and cover any "Extra Contractual Obligations" arising from Claims incurred on the STM policies. *Id.*

2

With respect to handling and settling Claims under the STM policies, the reinsurers "agree[] to abide by all Claim payments made by or on behalf of [Unified], . . . and . . . to pay or allow, as the case may be, its proportion of each such settlements." *Id.* at 18. The reinsurers also "agree[] to abide by all loss payments and settlements made by or on behalf of [Unified]" and "agree[] to pay or allow, as the case may be, [their] proportion of each such settlement." *Id.* Each reinsurer further agreed to be "liable for its proportionate share of Claim and Loss Adjustment Expenses incurred by or on behalf of [Unified] in connection therewith." *Id.*

Regarding lawsuits, the Reinsurance Treaty provides that Unified "shall . . . advise the Reinsurer promptly of all Claims which, in the opinion of [Unified], may result in a Claim hereunder and of all subsequent developments thereto which, in the opinion of [Unified], may materially affect the position of the Reinsurers." *Id.* But "[i]n the event a lawsuit is filed which involves a claims decision, [Unified] has the final authority in hiring outside counsel, agreeing upon the terms of a potential settlement and shall have the final authority over all strategic decisions made in the course of litigation." *Id.*

B.  The *Butler* Litigation

In February 2016, Charles Butler, a citizen and resident of Montana, purchased a Unified STM policy. Pl.'s App., Ex. F, ⁋⁋ 1, 2 (ECF No. 33). Six months later, Butler received a cancer diagnosis. Pl.'s App., Ex. F, ⁋⁋14, 17.

He incurred medical expenses related to his cancer treatment, for which he unsuccessfully sought payment under the STM policy.

In April 2017, Butler and his wife sued Unified in a Montana federal court, *Charles M. Butler, III, et al. v. Unified Life Insurance Company, et al.*, Case No. 1:17-cv-50, for alleged improper handling of Butler's claims under the STM policy. Pl.'s App., Ex. F (ECF No. 33). Among other things, the Butlers alleged that Unified discounted Mr. Butler's medical bills to lower than the "Reasonable and Customary Charge" as defined in the STM policy, which resulted in Unified underpaying the disputed claims.

In August 2018—after the expiration of the deadline to amend pleadings—the Butlers filed a motion for leave to file a third amended complaint which sought to add a class action claim on behalf of all Unified policyholders for breach of the STM policies. *See Butler,* Case No. 1:17-cv-50, Doc. 86. The Butlers then moved for partial summary judgment on the contract claims brought individually and purportedly on behalf of a class. *See id.* at Doc. 98. Unified filed a cross motion for summary judgment on October 5, 2018, which argued that the Butlers' claims fail based on the plain terms of the STM policy. *Id.* at Doc. 115.

The Montana district court granted the Butlers leave to amend on December 3, 2018, and filed the Butlers' third amended complaint on the docket. *Id.* at Doc. 180 & Doc. 181. In August 2019, a magistrate judge recommended granting the Butlers' individual breach of contract claim but

recommended denial of class certification and denial of summary judgment for the class. *Id*. at Doc. 225 & Doc. 226. Then, on September 30, 2019, the district court accepted the recommendation in part and granted the motion for partial summary judgment as to the Butlers' individual claims. *Id*. at Doc. 240. But the district court rejected the magistrate judge's recommendation regarding the class claim and granted the motion for class certification. *Id*. at Doc. 241. Unified sought interlocutory review from the Ninth Circuit Court of Appeals; the Ninth Circuit denied review on November 21, 2019. *Id*. at Doc. 252.

Unified first notified USF of the *Butler* litigation and the added class claim on December 20, 2019. Def.'s Br. 15 (ECF No. 27). Following notification, USF contributed to the defense by recommending that Unified (1) retain different counsel; (2) file a motion to reconsider the court's summary judgment ruling; (3) file a motion to reconsider the court's class certification ruling; and (4) make efforts to settle. *Id*. at 16. Unified initially declined USF's recommendation to move for reconsideration and communicated its plan to retain expert witnesses to testify "that Unified's claims repricing [methodology] was industry standard, policy compliant, and not a breach of the insurance contract." *Id*. at 17 (citing Exhibit A-13 (APP000262-264)). Until that point in the litigation, Unified had decided that retaining experts was not a cost-effective litigation strategy. *See* Def.'s Resp. 36 (ECF No. 44) (citing Exhibit A-5, Unified 30(b)(6) Deposition pp.

5

64:5–11 (APP000107) ("[B]efore it was a class action lawsuit, Unified discussed using expert witness, but it was not cost effective."); Exhibit A-6, Kevin Dill Deposition, 58:15–17 (APP000137) ("[I]t wasn't cost effective for [Unified] at that point in time . . . .")).

Unified eventually filed a motion to clarify the prior summary judgment ruling and a motion for leave to file a motion for reconsideration. *Id.* at Doc. 339 & 361. Regarding reconsideration, Unified argued that in holding that Unified's claim-pricing methodology breached the terms of the STM policies, "the Court incorrectly assumed that [Unified's] program utilized only one method for calculating payment amounts when it actually uses three different methods depending on the type of medical claim." Pl.'s App., Ex. X at 5 (ECF No. 33). Unified supported each motion with declarations from expert witnesses recommended to Unified by USF. *See* Pl.'s Br. 17 (ECF No. 32) ("Attached to the Motion for Clarification as Exhibit A was a supporting declaration of . . . experts that U.S. Fire had recommended.").

In March 2021, the Montana district court denied Unified's motions to clarify and for leave to file a motion for reconsideration. *See Butler,* Case No. 1:17-cv-50, at Doc. 373. In its order denying the motions, the court explained it was not persuaded that Unified could not have presented its expert witness testimony and accompanying factual argument regarding Unified's claim pricing methodology prior to the court ruling on class

certification. Pl.'s App., Ex. X, at 6 (ECF No. 33). Additionally, the court stated that regardless of the timing of the expert witness testimony, the accompanying argument would likely not have made a difference. *See id.* ("The Court is not persuaded that additional evidence of [Unified's] methodologies for calculating medical claim payments based on the type of claim would have materially affected the question of whether Unified breached its insurance policy by paying a lower amount on medical claims than required."). Further, in denying Unified's request for an order of clarification, the court reasoned that "[t]he exact methodology [Unified's] system used to calculate those payments was not material, the key finding was that [its] system resulted in lower payments than required. The Court sees no reason to limit that holding now." *Id.* at 9–10.

Shortly after the district court denied Unified's motions, the parties to the *Butler* litigation filed a joint motion for mediation. *See Butler,* Case No. 1:17-cv-50, at Doc. 375. The parties ultimately reached an agreement to settle the class claims for $8 million, and in November 2021, the district court granted final approval of the $8 million settlement. *Id.* at Doc. 427; Def.'s Br. 19 (ECF No. 27).

Pursuant to the Reinsurance Treaty, Unified sought payment from USF for its share of the settlement. Def.'s Br. 20 (ECF No. 27). USF refused to pay.

C.  This Declaratory Judgment Action

 USF initiated this civil action in April 2022, seeking a declaration that Unified provided it unreasonably late notice of the *Butler* litigation and, therefore, USF has no obligation to pay any amounts on any claims—of the Butlers or the class members—and that it has no obligation to reimburse Unified for any defense costs or damages imposed in the *Butler* litigation. Compl. (ECF No. 1). Alternatively, USF seeks a declaration that (i) USF has no obligation to indemnify Unified for the $2 million attorney fee award that was part of the $8 million *Butler* settlement because the Reinsurance Treaty does not permit payment of those costs; (ii) USF has no obligation to reimburse any defense costs incurred by Unified in defense of the *Butler* litigation; and (iii) USF is entitled to a set-off in subrogation for its share of any recovery obtained by Unified against any entity.

On June 17, 2022, Unified answered USF's Complaint and filed counterclaims for declaratory judgment, breach of contract, and attorney's fees. Answer (ECF No. 5). USF filed a Motion to Dismiss Unified's Counterclaims (ECF No. 8), and Unified responded by filing its operative pleading, the First Amended Counterclaims, on July 29, 2022. Am. Countercl. (ECF No. 12). Succinctly stated, Unified seeks a declaratory judgment that the Reinsurance Treaty obligates USF to pay USF's proportional share of the *Butler* litigation settlement and associated defense costs and fees. Unified argues that it timely provided USF notice of the

8

*Butler* litigation—when, in Unified's subjective opinion, it became clear that the *Butler* litigation would result in a claim against the reinsurers—and USF breached the Reinsurance Treaty by failing to pay USF's share of the *Butler* litigation settlement and associated costs.

Both parties have moved for summary judgment, and those cross motions are fully briefed and pending before the Court.

## Legal Standards

Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment who does not have the burden of proof at trial need only point to the absence of a genuine fact issue. *See Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995). Once the movant meets its initial burden, the non-movant must show that summary judgment is not proper. *See Duckett v. City of Cedar Park*, 950 F.2d 272, 276 (5th Cir. 1992). To do so, the nonmovant must go beyond its pleadings and designate specific facts showing there is a genuine issue for trial. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam).

By contrast, a party seeking summary judgment who bears the burden of proof at trial must establish "beyond peradventure all of the essential elements of the [claim or] defense to warrant judgment in his favor." *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002) (emphasis

removed) (quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986)). This means that the movant must demonstrate that there are no genuine and material fact disputes and that the movant is entitled to judgment as a matter of law. *See Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003).

The parties may satisfy their respective burdens "by tendering depositions, affidavits, and other competent evidence." *Topalian v. Ehrman*, 954 F.2d 1125, 1131 (5th Cir. 1992) (first citing *Int'l Shortstop, Inc. v. Rally's*, 939 F.2d 1257, 1263 (5th Cir. 1991); and then citing Fed. R. Civ. P. 56(e)).

## Analysis

Unified moves for summary judgment on its breach of contract and declaratory judgment counterclaims. USF moves for summary judgment on its declaratory judgment claim, as well as Unified's counterclaims for declaratory judgment, breach of contract, and attorneys' fees. The gravamen of the parties' dispute is whether Unified complied with its obligations under the Reinsurance Treaty to provide USF timely notice of the underlying claims in the *Butler* litigation.

By its motion, Unified argues that it settled the *Butler* litigation in good faith and ceded this loss to USF for reinsurance coverage under the Reinsurance Treaty, but USF denied coverage and failed to reimburse Unified for USF's portion of the Net Loss, thereby breaching the

Reinsurance Treaty. USF argues that it has no obligation to indemnify Unified for any amounts in relation to the *Butler* litigation because Unified failed to provide USF "prompt" notice of the Butlers' claims, as required by the terms of the Reinsurance Treaty. Instead, USF contends, Unified provided USF "unreasonably late" notice of the *Butler* litigation.

Unified contends that the Reinsurance Treaty does not require prompt notice "in the abstract." Rather, the obligation to provide notice arises only when—in Unified's subjective opinion—the underlying litigation "may result in a claim [under the Reinsurance Treaty]" and "may materially affect the position of the Reinsurer." According to Unified, until the Ninth Circuit denied its request for interlocutory appellate review, Unified subjectively believed the *Butler* litigation was meritless and would not result in a reinsurance claim. As such, Unified insists it gave USF timely notice. Unified further argues that even if its notice was late, it is still entitled to summary judgment because USF did not suffer any prejudice as a result of the late notice.

USF rejects Unified's assertion that the notice provision of the Reinsurance Treaty creates a subjective standard to decide when to provide notice. USF also argues that Unified provided late notice in bad faith, and therefore USF is not required to show that it suffered prejudice as a result of the alleged late notice. If prejudice is required, however, USF argues that

Unified's late notice prejudiced USF because it deprived USF of the ability to advise and assist Unified in the defense of the *Butler* litigation.

As explained below, Unified has established beyond peradventure all of the essential elements of its breach of contract counterclaim to warrant judgment in its favor. Also, there are no genuine disputes of material fact regarding USF's late notice defense or its declaratory judgment claim. Thus, Unified is entitled to summary judgment on its breach of contract and declaratory judgment counterclaims.

    A.  Unified is entitled to summary judgment on its breach of contract counterclaim.

To prevail on its breach of contract counterclaim, Unified must establish: (1) the Reinsurance Treaty is a valid contract; (2) USF breached the Reinsurance Treaty; (3) Unified performed or tendered performance; and (4) Unified sustained damages sustained as a result of USF's breach.[1] *Mullins v. TestAmerica, Inc.*, 564 F.3d 386, 418 (5th Cir. 2009) (citing *Aguiar v. Segal*, 167 S.W.3d 443, 450 (Tex. App.—Houston [14th Dist.] 2005, pet. denied)). The parties do not dispute that the Reinsurance Treaty is a valid and enforceable agreement. Thus, the Court begins with the second and third elements of the claim.

---

[1] The Reinsurance Treaty contains a "Governing Law" provision stating that Texas state law shall govern as to performance, administration, and interpretation of the agreement. Def.'s App. Ex. A-1, at 26 (ECF No. 28).

i.  Breach

As set forth above, the notice provision in the Reinsurance Treaty states:

> The Company [Unified] shall also advise the Reinsurer [USF] promptly of all Claims which, in the opinion of the Company, may result in a Claim hereunder and of all subsequent developments thereto which, in the opinion of the Company, may materially affect the position of the Reinsurer.

Def.'s App., Ex. A-1, art. VIII(B) (ECF No. 28). It is undisputed that Unified first notified USF of the *Butler* litigation on December 20, 2019. *Id.* at 11.

Unified argues that its notice was timely because the plain language of the notice provision creates a subjective standard for notice. That is, Unified's obligation to notify any reinsurer is not triggered until "in the opinion of [Unified,]" the litigation could result in reinsurance liability. Def.'s Br. 25 (ECF No. 27). Unified asserts that—prior to the Ninth Circuit's denial of interlocutory review of class certification—it subjectively believed that the Butlers' class claims were meritless and would not result in reinsurance liability. *Id.* at 25–26. Unified also asserts that because it paid off the Butlers' individual claims, it also subjectively believed that the individual claims would not result in reinsurance liability. *Id.*

USF disputes that the Reinsurance Treaty creates an entirely subjective standard for notice and insists that Unified's notice was unreasonably late, and thus, USF is not under any obligation to pay Unified. USF explains that the Reinsurance Treaty is a quota-share treaty, which

provides reinsurance coverage to the first dollar of liability of Unified. Therefore, USF asserts, Unified should have notified USF about the *Butler* litigation at or near the time the Butlers filed their initial Complaint in April 2017—or at the least, when Unified began incurring legal expenses which were allocated to the Butlers' claim. Pl.'s Br. 19 (ECF No. 32).

The Court construes USF's late notice argument as an affirmative defense, on which USF bears the burden of proof. *See Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 314 (Tex. 2006) (referring to "prior material breach" as an affirmative defense); *Blackstone Med., Inc. v. Phoenix Surgicals, L.L.C.*, 470 S.W.3d 636, 646 (Tex. App.—Dallas 2015, no pet.) ("The contention that a party to a contract is excused from performance because of a prior material breach by the other contracting party is an affirmative defense that must be affirmatively pleaded."). To prevail on its late notice defense, USF must establish both (1) a prior breach—late notice; and (2) materiality—prejudice from such late notice. *Berkley Reg'l Ins. Co. v. Philadelphia Indem. Ins. Co.*, 690 F.3d 342, 349 (5th Cir. 2012) ("[I]n order for an insured's breach to defeat coverage, the breach must prejudice the insurer in some tangible way."); *Trumble Steel Erectors, Inc. v. Moss*, 304 F. App'x 236, 239 (5th Cir. 2008) (quoting *PAJ, Inc. v. Hanover Ins. Co.,* 243 S.W.3d 630, 631, 636–37 (Tex. 2008) ("Under Texas law, when an insurance policy requires that the policyholder notify its insurer of any claim or suit 'as soon as practicable,' the policyholder's 'failure to timely notify its

14

insurer of a claim or suit does not defeat coverage if the insurer was not *prejudiced* by the delay.'"); *St. Paul Guardian Ins. Co. v. Centrum G.S. Ltd.*, 383 F. Supp. 2d 891 (N.D. Tex. 2003) (under Texas law, insurer was required to show prejudice from insureds' failure to provide timely notice of claims, absent the policy "specifically mention[ing] the consequences of not giving timely notice" or the policy "defin[ing] the notice requirement as a condition precedent to coverage").[2]

Under the terms of the Reinsurance Treaty, Unified has a duty to provide "prompt[]" notice once, "*in the opinion of [Unified]*," the underlying lawsuit may result in a claim that would result in reinsurance liability. Def.'s App., Ex. A-1, art. V(A); art. VIII(B) (ECF No. 28) (emphasis added). The notice provision conspicuously fails to include any modifier requiring that Unified's opinion must be "reasonable." Despite this plain language, USF argues that the Court should construe the notice provision to include a requirement that Unified's opinion be objectively reasonable, because to

---

[2] Neither party cites any authority—and the Court does not find any cases in its own research—discussing specifically whether Texas law requires prejudice in the context of reinsurance, rather than direct insurance. But the Court discerns no rationale for treating reinsurers differently than insurers in the context of asserting a late notice defense. The Court favorably notes authority reasoning that the need to show prejudice is even more important in the reinsurance context compared to direct insurance. *See, e.g., Christiana Gen. Ins. Corp. v. Great Am. Ins. Co.,* 745 F. Supp. 150, 159 (S.D.N.Y. 1990) (reinsurers "have no duty to defend claims," and the "the potential staleness of claim" is not "as significant a concern to a reinsurer as it is to a primary insurer").

construe the provision precisely as written would grant Unified "unfettered discretion" and "would effectively read the notice provision out of the treaty." Pl.'s Resp. 5–6 (ECF No. 39). Further, USF argues, a subjective standard would be contrary to the principle of Texas law that requires courts to construe contracts from a "utilitarian standpoint" given the particular business activity involved. *Id.* 6–7 (citing *Hackberry Creek Country Club, Inc. v. Hackberry Creek Home Owners Ass'n*, 205 S.W.3d 46, 62 (Tex. App.—Dallas 2006). According to USF, the purpose of the notice provision is to permit the reinsurers to decide whether to associate in the defense of a particular claim, and that purpose would be completely undermined if Unified could wait to notify the reinsurers until after liability had been imposed. *Id.* But ultimately, USF's proposed construction would have the Court ignore fundamental principles of contract interpretation. *See Lincoln Gen. Ins. Co. v. U.S. Auto Ins. Servs., Inc.*, 787 F.3d 716 (5th Cir. 2015) (under Texas law, reinsurance agreements are construed by applying ordinary rules of contract interpretation).

Namely, Texas courts should be "hesitant to imply terms into contracts." *Barrow-Shaver Res. Co. v. Carrizo Oil & Gas, Inc.*, 590 S.W.3d 471, 489 (Tex. 2019) (citing *Murphy Expl. & Prod. Co.–USA v. Adams*, 560 S.W.3d 105, 110 (Tex. 2018) (declining to read any implied proximity requirement concerning an offset well into a lease provision); *URI, Inc. v. Kleberg Cnty.*, 543 S.W.3d 755, 771 n.81 (Tex. 2018) (explaining that Texas

courts will not imply restraints for which the parties have not bargained); *Tenneco Inc. v. Enter. Prods. Co.*, 925 S.W.2d 640, 646 (Tex. 1996) (recognizing that Texas courts have long refused to imply restraints that are absent from the agreement)); *see also Gamma Grp., Inc. v. Transatlantic Reinsurance Co.,* 242 S.W.3d 203, 212 (Tex. App.—Dallas 2007, pet. denied) (citing *Helmerich & Payne Int'l Drilling Co. v. Swift Energy Co.,* 180 S.W.3d 635, 640 (Tex. App.—Houston [14th Dist.] 2005, no pet.) ("A court may not add to a contract under the guise of interpretation."). Texas courts do not rewrite contracts to insert provisions parties could have included or imply restraints for which the parties did not bargain. *Gamma,* 242 S.W.3d at 212 (citing *Tenneco,* 925 S.W.2d at 646). A term will not be implied simply to make a contract "fair, wise, or just." *Universal Health Serv., Inc. v. Renaissance Women's Group, P.A.,* 121 S.W.3d 742, 748 (Tex. 2003).

Here, bound by long-standing rules of contract construction, the Court will not insert the term "reasonable" into the bargained-for notice provision. *See Gamma*, 242 S.W.3d at 213 ("To adopt the trial court's interpretation of the contract would require us to inject meaning not expressed in words chosen by the parties and placed within the four corners of the agreement. Had these sophisticated businesses intended . . . the agreement could easily have included the word "reasonable"[.]"). Creating a reasonableness constraint would ignore and effectively eliminate the plain language chosen and agreed to by both parties. *See Lincoln Gen. Ins. Co. v.*

*U.S. Auto Ins. Servs., Inc.*, 809 F. Supp. 2d 582, 589 (N.D. Tex. 2011) (citing *Westwind Exploration v. Homestate Sav. Ass'n*, 696 S.W.2d 378, 382 (Tex. 1985)) ("If a certain construction of the contract renders a clause meaningless, that reading is unreasonable and therefore not favored."). Regardless of any purported utilitarian rationale related to the business purpose of the Reinsurance Treaty, the Court is constrained by the contract's express terms.

Further, USF's principal concern that the notice provision, as written, grants Unified "unfettered" discretion is overstated. The notice provision constrains Unified to follow its *actual* subjective opinion. Accordingly, in the absence of any binding authority addressing notice to a reinsurer under a reinsurance contract,[3] the Court concludes the language of the notice provision in the Reinsurance Treaty creates a subjective standard.

And here, the uncontroverted summary judgment evidence establishes that Unified subjectively did not believe the Butlers' claim would result in reinsurance liability to USF in April 2017. At that time, Unified had paid the Butler-related health care benefits, and it was initially handling the Butlers' claims through the claims appeal process. Def.'s App., Ex. A-5 (ECF No. 28) Unified 30(b)(6) Deposition, at 114 ("[W]e felt there was no claim against U.S. Fire at that time."). Unified subjectively believed that it had

---

[3] USF concedes "[n]o Texas case has addressed reasonable notice to a reinsurer under a reinsurance contract." Pl.'s Br. 23 (ECF No. 32).

properly processed the Butlers' claims under the policy terms. *Id.* ("We felt that the Butlers' claims were processed per their policy."); Ex. A-6, Kevin D. Deposition, at 133 ("Unified felt like all the claims were paid."). Unified also held the opinion that the class claims had no merit, and, therefore, the *Butler* litigation would not result in a claim against any reinsurers. As late as August 2019, Unified relied on the magistrate judge's recommendation to deny class certification and deny summary judgment for the class. Unified's opinion changed on November 21, 2019, following the Ninth Circuit's denial of Unified's interlocutory appeal of the district court's rejection of the recommendation regarding class certification. At that time, it became clear to Unified that the class claims would proceed beyond the certification stage, and Unified subjectively believed the *Butler* litigation could result in a claim under the Reinsurance Treaty. Unified notified the reinsurers of the *Butler* litigation approximately 30 days later—on December 20, 2019.

In view of the summary judgment evidence, there is no genuine dispute as to Unified's subjective opinion regarding when it became likely that the claims in the *Butler* litigation would result in reinsurance liability for USF. Thus, the Court concludes there is no genuine dispute—indeed, Unified has shown beyond peradventure—that Unified provided "prompt" notice to USF of all Claims which, "in the opinion of [Unified], may result in a Claim [under the Reinsurance Treaty]," as required by the parties' agreement.

But even if Unified had provided late notice of the *Butler* litigation, USF's claim that it is not obligated to pay fails because USF was not prejudiced by such late notice.

USF contends that it does not have to show prejudice to avoid paying a share of the settlement because "Unified failed to provide timely notice in bad faith." Pl.'s Br. 26 (ECF No. 32). But USF does not cite any binding authority holding that a showing of bad faith negates an insurer's obligation to show prejudice under Texas law. Rather, USF relies on two cases from the Second Circuit Court of Appeals interpreting New York Law, *Unigard Sec. Ins. Co. v. N. River Ins. Co.,* 4 F.3d 1049 (2d Cir. 1993), and *Christiania General Ins. Corp. of New York v. v. Great Am. Ins. Co.*, 979 F.2d 268 (2d Cir. 1992), as well as a New Hampshire state court case interpreting California and New York law, *Certain Underwriters at Lloyd's London v. Home Ins. Co.*, 146 N.H. 740, 783 A.2d 238 (N.H. 2001).

Relying on these nonbinding authorities, USF asserts that the summary judgment record establishes that Unified acted in bad faith in providing late notice to USF because "the president of Unified admitted that it had no procedure or controls to ensure notification of reinsurers of claim litigation brought by insureds." Pl.'s Br. 27 (ECF No. 32) (citing Ex. A, 53:2-4 (USF APPX 0014)). But even considering the summary judgment evidence in the light most favorable to USF, the record does not support that Unified had no procedure for deciding when to notify its reinsurers of potential

20

liability. Rather, the record reveals that Unified had a procedure of deciding when notice was required on a case-by-case basis, depending on the particular facts of each potential claim. *See* Def.'s App., Ex. C-1 ¶ 4 (ECF No. 45) (K. Dill Declaration). Such case-by-case determination was a good-faith, reasonable notification procedure in light of the discretion afforded to Unified by the plain language of the notice provision in the reinsurance agreement. *See Munich Reinsurance Am., Inc. v. Am. Nat. Ins. Co.*, 999 F. Supp. 2d 690, 752 (D.N.J. 2014), aff'd, 601 Fed. Appx. 122 (3d Cir. 2015) (*Unigard II* did not require "best practices" for an insured to avoid a bad faith finding; such caselaw found practices sufficient if they were "reasonable in light of the circumstances").

Accordingly, even if the authority on which USF relies were binding on the Court, it does not support USF's contention that Unified acted in bad faith. USF thus has the burden to show it was prejudiced by any late notice.

To establish prejudice, "[b]ecause of the inherently uncertain nature of its burden—demonstrating how events may have differed under a different set of facts—an insurer need not 'show precisely what the outcome would have been had timely notice been given.'" *Trumble*, 304 F. App'x at 239–40 (quoting *Am. Ins. Co. v. Fairchild Indus., Inc.,* 56 F.3d 435, 440 (2d Cir. 1995)). "Uncertainty does not, however, relieve the insurer of the burden to 'show the *precise manner* in which its interests have suffered.'" *Id.* (quoting 13 RUSS & SEGALLA, COUCH ON INSURANCE § 193:29).

Indeed, "the insurer [or reinsurer] must prove more than 'prejudice that is only theoretical or presumed merely from the length of the delay.'" *Id.* (quoting *Coastal Ref. & Mktg., Inc. v. U.S. Fid. & Guar. Co.*, 218 S.W.3d 279, 288 (Tex. App.—Houston [14th Dist.] 2007, pet. denied)).

Put another way, to avoid reinsurance coverage, "*actual* prejudice" is required. *Clarendon Nat. Ins. Co. v. FFE Transp. Servs., Inc.*, 176 F. App'x 559, 562 (5th Cir. 2006) (emphasis added). Late notice "must prejudice the insurer in some tangible way." *Trumble*, 304 F. App'x at 239 (quoting *PAJ, Inc. v. Hanover Ins. Co.,* 243 S.W.3d 630, 631, 636–37 (Tex. 2008)). And generally, "an insurer must show not merely the possibility of prejudice, but, rather, that there was a substantial likelihood of avoiding or minimizing the covered loss [had the insured provided earlier notice][.]" *Id.* at 240 n. 19 (quoting 13 RUSS & SEGALLA, COUCH ON INSURANCE § 193:29).

Texas courts have outlined "specific and definitive" circumstances in which prejudice occurs as a matter of law:

> when the insurer, without notice or actual knowledge of suit, receives notice after entry of default judgment against the insured; (2) when the insurer receives notice of the suit and the trial date is fast approaching, thereby depriving it of an opportunity to investigate the claims or mount an adequate defense; (3) when the insurer receives notice of a lawsuit after the case has proceeded to trial and judgment has been entered against the insured; and (4) when the insurer receives notice of a default judgment against its insured after the judgment has become final and nonappealable.

*St. Paul Guardian*, 383 F. Supp. 2d at 902 (collecting Texas cases). The facts of this case do not fit squarely into any of these specific categories. Unified notified USF of the *Butler* litigation after the Montana district court granted partial summary judgment on liability and the Ninth Circuit denied interlocutory review. But Unified notified USF well before the parties reached any settlement agreement. As Unified points out, "[USF] received notice over a year before a settlement agreement was reached, nearly two years before the final settlement was approved by the court, and presumably even longer than that had the case proceeded to trial." Pl.'s Reply 19 (ECF No. 47). USF had notice of the *Butler* litigation in time to contribute to at least some of its defense. For example, once notified, USF contributed to the arguments made to the Montana court in Unified's motion for leave to file a motion for reconsideration and its motion for clarification.

USF claims it was prejudiced by Unified's notice because it "was not able to exercise its right to associate and to assist Unified in the defense of the case at a time when it would have been helpful." Pl.'s Br. 29 (ECF No. 32). Specifically, USF asserts that if it had been notified earlier, it could have recommended experts to explain to the court how Unified's methodology for pricing and handling claims worked and that it was consistent with the terms of the STM Policies. *See id.* at 32. Without these experts, USF contends, Unified "failed to respond to the Butlers' central argument, *i.e.*, that [Unified's] methodology breached the [STM] policy because it was based on

what providers customarily accepted, rather than what they charged." Pl.'s Br. at 30 (ECF No. 32).

At best, considering the evidence in the light most favorable to USF, the summary judgment record raises a genuine dispute only of *theoretical* rather than *actual* prejudice. USF does not point to evidence of any tangible injury but instead stresses the mere possibility that, had it been notified earlier, its experts could have made a difference. But a mere possibility is not enough—USF has the burden to point to evidence indicating a substantial likelihood of a different result.

Further, an additional problem for USF's prejudice argument is that it *did* ultimately recommend its preferred expert witnesses to Unified. And based upon that recommendation, Unified supported its motions for leave to file a motion to reconsider and its motion to clarify with declarations from some of USF's preferred experts. *See id*. at 17. But even when provided with this testimony and further explanation of the relevant methodology, the Montana court denied both motions and affirmed its summary judgment ruling. The court even clarified that being presented with the same expert testimony at an earlier time would "not have materially affected" its ultimate decision. Pl.'s App., Ex. X at 6 (ECF No. 33). And further, the court indicated that the very topic the recommended experts testified about—the kind of methodology used by Unified in handling claims—did not play a significant

role in its decision making. *See id*. at 9–10. ("The exact methodology [Unified's] system used to calculate those payments was not material[.]").

Additionally, the record supports that prior to notifying USF, Unified itself considered hiring experts to explain the relevant claim-handling methodology. But Unified consciously decided against retaining such experts after conducting a cost-benefit analysis at an earlier stage of litigation. *See* Def.'s Resp. 36 (ECF No. 44). USF does not point to any evidence in the record indicating that it likely would have been able to change Unified's mind regarding this litigation strategy. This lack of evidence is especially damaging to USF's Motion, given the provision in the reinsurance agreement stating that while USF has the "right to participate . . . in a defense and/or settlement of any Claims of which it may be interested[,]" Unified ultimately "has the final authority in hiring outside counsel, agreeing upon the terms of a potential settlement and shall have final authority over all strategic decisions made in the course of litigation." Def.'s App., Ex. A-1, art. VIII(E) (ECF No. 28). Based on this record, the Court finds that no reasonable jury could find that USF was actually, tangibly prejudiced on the basis that it contends.

In sum, the Court determines that there is no genuine dispute that Unified gave USF "prompt" notice of the Butlers' claims, as required by the terms of the Reinsurance Treaty. Further, even if Unified did provide late notice, USF was not prejudiced by such notice. As such, the Court

determines that USF breached the Reinsurance Treaty when it failed to pay its proportion of the class settlement and associated costs and fees.

### ii. Damages

Unified seeks damages in the amount of USF's portion of the $8 million settlement approved by the Montana district court in the *Butler* litigation. In the court's order approving the settlement, the court ordered that $2 million of the total amount be awarded to class counsel. *See Butler,* Case No. 1:17-cv-50, Doc. 427 at 5–6. Under Article IV of the reinsurance agreement, USF agreed to assume a proportional share of Unified's "Net Loss," which is defined as Unified's "liability for Claims, and Claims Adjustment Expense, as respects policies covered hereunder." Def.'s App., Ex. A-2, art. V(C) (ECF No. 28); *see also* Ex. A-1, art. V(C) (defining "Net Loss" as "the sum of Claims paid by or on behalf of the Company under the Policies reinsured hereunder plus any Loss Adjustment Expense"). "Claims" are defined as "damages, benefits or indemnity that [Unified] pays or is liable to pay, whether by strict policy conditions or by way of compromise, as a consequence of [Unified's] issuance of the policies." Def.'s App., Ex. A-2, art. V(A) (ECF No. 28); *see also* Ex. A-1, art. V(A) (defining "Claims" as "the Company's liability for eligible expenses as defined in the Company's Policy). The $8 million settlement amount, including the $2 million counsel fee, falls within this definition of "Claims." Thus, USF is obligated to pay its

portion of the $8 million class settlement based on its agreement to pay a proportional share of Unified's "Net Loss."

Further, the terms "Loss Adjustment Expense" and "Claims Adjustment Expense" under the Reinsurance Treaty are defined as "expenditures by the Company and as allocated to an individual claim or loss in investigating, resisting, settling, adjusting, auditing, managing and processing of Claims, including litigation expenses and pre or post-judgment interest, other than for office expense and for the salaries and expenses of employees of the Company, or Manager, or any subsidiary or related or wholly-owned company of the Company or Manager." Def.'s App., Ex. A-2, art. V(B); Def.'s App., Ex. A-1, art. V(B). USF argues that the phrase "allocated to an individual claim" precludes coverage for Unified's attorney's fees to the extent they went towards defending the class action. Pl.'s Resp. 24–25 (ECF No. 39). But when read in context of the entire "Loss Adjustment Expense" definition, the phrase "allocated to an individual claim" does not amount to an exclusion of all attorney's fees paid to defend class action claims. Rather, the phrase limits coverage to expenses that are directly related to claims against the reinsured, as opposed to general, unallocated overhead expenses.

USF makes several arguments that the summary judgment record before the Court is insufficient to determine the amount of the settlement USF owes to Unified. First, USF emphasizes that it is responsible for

different percentages of the class settlement depending on when each individual class member purchased a STM policy. *See id.* at 23 ("The Quota Share Treaty was divided into three Treaty Years, November 1, 2014 to November 1, 2015, November 1, 2015 to November 1, 2016, and November 1, 2016 to November 1, 2017. In the first Treaty year, US Fire was liable for 30%, and in the other two Treaty Years US Fire was liable for 25%."). USF contends that because of this, the Court will need to hear more evidence as to the payments to individual class members to determine the amounts owed by USF. *Id.* at 24. But this is not a genuine issue in this case, since Unified has stipulated that it seeks only a 25% proportional share from USF. This makes the damages amount "mathematically ascertainable at the entry of summary judgment[.]" *Stark Master Fund Ltd. v. Ausmus*, 2010 WL 11618653, at *8 (N.D. Tex. Mar. 31, 2010).

Unified has established beyond peradventure all of the essential elements of its breach of contract counterclaim to warrant judgment in its favor.

### B. Unified is entitled judgment as a matter of law on the parties' declaratory judgment claims.

The parties also request summary judgment on their declaratory judgment claims. Under "[t]he Declaratory Judgment Act . . . federal courts [are authorized] to 'declare the rights and other legal relations of any interested party seeking such declaration.'" *Val-Com Acquisitions Tr. v.*

*Chase Home Fin., L.L.C.*, 434 F. App'x 395, 395 (5th Cir. 2011) (quoting 28 U.S.C. § 2201(a)). "[A] declaration may issue only to resolve an actual controversy between the parties. An actual controversy is a dispute that is definite and concrete, touching the legal relations of parties having adverse legal interests." *Id.* (citations omitted).

As explained above, the Reinsurance Treaty is a valid and enforceable contract pursuant to which USF agreed to be "liable for its proportionate share of Claim and Loss Adjustment Expenses incurred by or on behalf of [Unified]" in the *Butler* litigation. Unified timely provided USF notice of the *Butler* litigation—when, in Unified's subjective opinion, it became clear that the *Butler* litigation would result in a claim against USF. Therefore, USF is obligated to pay USF's proportional share of the *Butler* litigation settlement and associated defense costs and fees. USF's failure to pay its share  of the *Butler* litigation settlement and associated costs constitutes a breach of the Reinsurance Treaty.

USF alternatively seeks a declaration from the Court that "[USF] is entitled to a set-off for any amounts recovered by Unified in subrogation." Compl. ¶ 1 (ECF No. 1). The Reinsurance Treaty provides that "[t]he Reinsurer shall be credited with its proportionate share of recoveries from subrogation." Def.'s App., Ex. A-1, art. X (ECF No. 28). Subrogation provides that "'the insurer stands in the shoes of the insured, obtaining only those rights held by the insured against a third party, [and] subject to any defenses

29

held by the third party against the insured[.]'" *Colony Ins. Co. v. First Mercury Ins. Co.*, 88 F.4th 1100, 1112–13 (5th Cir. 2023) (citing *Mid-Continent Ins. Co. v. Liberty Mut. Ins. Co.*, 236 S.W.3d 765, 774–75 (Tex. 2007)).

But to prevail on its subrogation claim, USF "must present sufficient evidence upon which a reasonable factfinder could conclude that it paid a debt owed by" another reinsurance company or other third party. *Id.* "To do so, [USF] could 'present evidence upon which a fact finder could segregate covered damages,' such as 'internal memoranda, correspondence between the insurer and insured, communications with the injured party, [and] investigative reports.'" *Id.* at 1113. Ultimately, USF is entitled to reimbursement through subrogation for its settlement contributions "only if it paid more than its fair share of the costs[.]" *Id.*

Here, USF does not point to any competent summary judgment evidence showing that it has, or will, pay more than its fair share of the settlement amount and associated costs. After initially requesting a declaration that it is entitled to a set-off, USF does not brief its subrogation claim at all in its own motion for summary judgment or in response to Unified's affirmative motion. Because USF does not create a genuine dispute—or even attempt to argue in its summary judgment motion or briefing—that Unified's requested damages will require USF to pay for damages that some other reinsurance company should have covered, its

subrogation claim must fail. Accordingly, USF has not shown that it is currently entitled to a set-off based on subrogation.

C. Attorneys' fees

Unified requests reasonable attorney's fees and expenses incurred in this lawsuit, pursuant to Texas Civil Practice and Remedies Code Chapter 38. Am. Countercl. 10 (ECF No. 12). "To recover attorney's fees under Section 38.001, a party must (1) prevail on a cause of action for which attorney's fees are recoverable, and (2) recover damages." *Green Int'l, Inc. v. Solis,* 951 S.W.2d 384, 390 (Tex. 1997).

Section 38.001 allows for attorney's fees in a successful breach of contract action. Tex. Civ. Prac. & Rem. Code § 38.001. Because Unified prevails on its breach of contract claim and is entitled to damages, it is entitled to reasonable attorney's fees under Chapter 38. The Court ORDERS Unified to file any motion for such attorney's fees within 30 days from the entry of this Order.

## Conclusion

For the reasons stated, the Court determines that USF owes a duty under the Reinsurance Treaty to indemnify Unified for USF's proportionate share of the *Butler* settlement and associated costs and fees. The Court further determines that USF breached the Reinsurance Treaty by denying coverage to Unified. Accordingly, the Court DENIES USF's Motion for Summary Judgment (ECF No. 31), GRANTS Unified's Affirmative Motion

31

for Summary Judgment (ECF No. 26), and DISMISSES USF's claims with prejudice. The Court will enter a final judgment by separate order.

**SO ORDERED.**

March 29, 2024.

REBECCA RUTHERFORD
UNITED STATES MAGISTRATE JUDGE